FILED
JUN - 7 2007
U.S. COURT OF FEDERAL CLAIMS

# In The United States Court of Federal Claims

**Seraphin Transport Co.**
**P.O. Box 273**
**Lakebay, Washington 98349**
Plaintiff,

vs.

**The United States**
Defendant

Case No. 07-359 C

ORIGINAL

## Complaint for Termination for Convenience Costs and Bad Faith Termination

Seraphim Transport Co., Plaintiff, by its attorney, Michael J. Trevelline, sues the United States of America, Defendant, and states:

1. This Court has jurisdiction over these parties and these matters pursuant to 28 U.S.C. § 1491(a)(1) and the Contract Disputes Act, 41 U.S.C. § 601 et seq. (the CDA).

2. Plaintiff is a Washington State general partnership in the business of providing various services to the United States and other entities, with operations in Kuwait, and Plaintiff is a small, disabled-veteran, minority-owned business.

3. Defendant is the United States of American, acting through the U.S. Army.

4. This is an appeal from a deemed denial of a termination proposal submitted on 31 October 2006.

### The Contract

5. On or about 19 December 2005, the Army awarded Contract W912D1-06-C-0018 to Seraphim.

6. The contract was a one-year agreement for bottled water to be delivered to various locations in Kuwait and Iraq as the government required. (Exhibit A; first page of the Contract.)

7. The original solicitation and contract provided for a purchase of $17,000,000 worth of water and required warehousing and storage for approx. up to 450,000 cases per month.

8. A modification effective 20 December 2005 reduced the contract to $3,500,002 for the annual purchase (Exhibit B: Amendment of Solicition/Modification of Contract).

9. The contract as modified provided that Seraphim would deliver 608,696 cases of bottled water to locations to be designated by the Army at the time of requesting particular deliveries.

10. The contract termed these requests "Calls." Pursuant to the contract, Seraphim was required to be able to accept Calls twenty-four hours per day and to make deliveries anywhere in Kuwait and Iraq as designated by the Army in the Call.

11. The contract provided that, outside of total destruction, Seraphim was responsible for damage done to its delivery trucks.

12. The contracting officer was Major John L. Cockerham.

13. The contract required Seraphim to be able to make deliveries immediately upon award of the contract on 19 December

2005.

14. Under this provision, Seraphim did make prompt delivery of significant quantities of water shortly after being awarded the contract.

## Preparations to Perform

15. Be careful here since this pertains to precontract costs which are generally not recoverable unless specifically allowed. I think we might be able to make a case that the Army required Seraphim to make this investment .Since the contract required immediate ability to deliver water, Seraphim as soon as the contract was awarded prepared to perform as required under the agreement. It contracted with a supplier to provide bottled water after investigating the supplier's ability to make available at a Kuwait wharehouse bottled water on short notice and in the quantities required by the Government.

16. Likewise, Seraphim negotiated with transportation companies to supply trucks after diligently investigating them to assure they had the ability and wherewithal to transport bottled water on short notice in the quantities required by the Government to any location in Iraq or Kuwait.

17. Since several transportation companies were available and able to supply trucks on short notice, Seraphim shrewdly made known to the companies that they were competing.

18. As well, Seraphim contracted for office and warehouse space.

## Seven Employment Contracts

19. As soon as the contract was awarded, Seraphim

entered into contracts with employees. Seraphim contracted for seven employees to service the contract for one year. The seven include the two Seraphim principals.

20. Seraphim entered into seven employment contracts and Seraphim limits its claim to a small part of its obligations under five of these contracts.

21. Randy Hook was hired to work full-time as contract manager/administrator. Mr. Hook's compensation for the year was set at $144,000 as well as a $10,000 signing bonus and a $10,000 completion bonus ($20,000 in bonuses) . The salary of $144,000 breaks down to weekly payments of $2,769.

22. Michael Hightower was hired to work full-time as an operations manager.

23. Mr. Hightower's compensation for the year was set at $120,000 and the same $20,000 in bonuses. His $120,000 annual salary breaks down to weekly payment of $2,307.

24. Seraphim hired Jerry Joe Hook to work full time and brought him to Kuwait from the United States in January 2006 to work as freight supervisor and driver.

25. His annual salary was $92,000, with $20,000 in the same bonuses. His annual salary of $92,000 breaks down to weekly payment of $1,789.

26. Seraphim hired Anthony Hook as a freight supervisor.

27. His annual salary was $92,000, with $20,000 in the same bonuses. Thus, his annual salary of $92,000 breaks down to weekly payment of $1,789.

28. Seraphim hired Wanda Cirrincione and brought her to Kuwait from the United States to work as warehouse attendant and ordering supervisor.

29. Her annual salary was $92,000, with $20,000 in the same bonuses. Thus, her annual salary of $92,000 breaks down to weekly payment of $1,789.

30. Seraphim employed Saadia Omar Haji Musa and Umesha Balasuriya to work part-time as warehouse attendants/office clerks when Ms. Cirrincione was unavailable or needed assistance.

31. Their annual salary was $11,000 each, with no bonuses or benefits.

32. Saadia Omar Haji Musa and Umesha Balasuriya performed no duties relevant to the contract. As such, Seraphim is not making a claim for costs incurred under their employment contracts.

33. Seraphim offered salaries and benefits in line with contractor employment of U.S. expatriates in Kuwait.

34. A $10,000 signing bonus and a $10,000 completion bonus is well within the recognized business practice of other government contractors.

35. The completion bonuses are owing since the employment agreements provide that completion bonuses are due and owing when non-completion is not the fault of the employee.

36. Seraphim paid the cost of bringing two employees from the United States to Kuwait—JerryJoe Hook, and Wanda Cirrincione.

37. As well, Seraphim undertook to transport the immediate family of its employees to Kuwait and to provide housing for all employees and their families.

**Work Completed Under the Contract**

38. Seraphim began operations promptly after being awarded the contract on 19 December 2005 and received a Call for 40,000 cases of one-half liter bottles of water in late January 2006.

39. Seraphim promptly delivered the 40,000 case of water to a location in Iraq on time.

40. Accordingly, pursuant to the contract, Seraphim billed the Army $230,000 for the water (40,000 x $5.75).

41. The U.S. Army paid Seraphim for this Call.

**Termination of the Contract**

42. In late January 2006, Major Momon, Contract Administrator, sent an email to Seraphim stating he was reviewing the contract.

43. In an email of 2 February 2006, Seraphim responded stating that it was a small, disabled-veteran minority-owned business.

44. In response to this, Contracting Officer Schenk terminated the contract for the convenience of the government on 8 February 2006.

45. After meeting with Seraphim, Lt Colonel James Blanco, Assistant to the Director, Small Business Program Office, Secretary of the Army, wrote to Major Momon on 16 February 2006 stating in part:

> After reviewing documentation provided by Mr. Hook to include the contract, mods and termination letter, we find it challenging to determine your rationale for the Termination for Convenience (TforC). This is (sic) situation is further troubling because it appears that Seraphim, a small, Service-Disabled Veteran-Owned Small Business (SDVOSB), will be forced to leave the theater because of the economic hardship caused by terminating Contract W912D1-06-C-0018.

46. Thus, Lt Colonel Blanco expressed the fact that termination would force Seraphim to leave the theater, causing substantial termination damages.

## Winding Up of Operations

47. Following termination, Seraphim wound up operations, doing its best to mitigate damages.

48. Seraphim was able to minimize the damage to the Government since upon notice of termination, Seraphim was able to negotiate early termination of all of its supply, wharehouse, and transportation contracts.

49. As a consequence, Seraphim's termination damages do not include any contractual penalties or breach of contract damages incurred through subcontracts.

50. After seeking reconsideration through Lt Colonel Blanco and after seeking alternate contracts, it terminated all its employees and paid for the return of some employees to the United States.

51. It worked to obtain and obtained gratuitous consents to terminate early its one-year supply contracts with its subcontractors.

52. Messrs. Hook and Hightower are currently actively seeking employment in the United States and elsewhere as well as

having Seraphim bid on other contracts.

53. Messrs. Hook and Hightower worked each a total of eleven weeks on this contract—seven during the period of the contract from 19 December 2005 to 8 February 2006 and four during the winding up period from 8 February 2006 to 8 March 2006.

54. Ms. Wanda Cirrincione earned two weeks of salary by traveling to Kuwait.

55. Mr. Anthony Hook earned two weeks of salary.

56. Mr. JerryJoe Hook earned five weeks of salary by traveling to Kuwait and performing services.

57. As soon as Seraphim determined that it would be unable to assign these employees to other work, their employment was termination.

58. Seraphim was then obligated to return these employees to the United States. Seraphim's claim then is limited to the following:

**a. Randy Hook Compensation**

| Bonuses | $2,769 in salary for 11 weeks worked | **Total Randy Hook Compensation** |
|---|---|---|
| $20,000 | $30,459 | **$50,459** |

**b. Michael Hightower Compensation**

| Bonuses | $2,307 in salary for 11 weeks worked | **Total Michael Hightower Compensation** |
|---|---|---|
| $20,000 | $25,377 | **$45, 377** |

**c. JerryJoe Hook Compensation**

| Bonuses | $1,789 in salary for 5 weeks worked | **Total JerryJoe Hook Compensation** |
|---|---|---|
| $20,000 | $8,945.00 | **$28,945.00** |

**d. Anthony Hook Compensation**

| Bonuses | $1,789 in salary for 2 weeks available to work | **Total Anthony Hook Compensation** |
|---|---|---|
| $20,000 | $3,578 | **$23,578** |

**e. Wanda Cirrincione Compensation**

| Bonuses | $1,789 in salary for 2 weeks available to work | **Total Wanda Cirrincione Compensation** |
|---|---|---|
| $20,000 | $3,578 | **$23,578** |

**f. Cost of Air Transportation between Kuwait and United States**

Randy Hook family (Umesha S. Balasuriya, Maniesha R.B. Hook, Japheth I. Hook, Hannah N. Hook) (Seattle, Washington)..........................$17,050.00
Michael Hightower family (Saadia Hightower, Janai Hightower) (Nashville, Tennessee)..........................................................................$14,722.00[1]
JerryJoe Hook (Seattle, Washington) ..........................................................$2,758.00
Wanda Cirrincione (Seattle, Washington).....................................................$2,659.00
**Total ..................................................................................................$37,189.00**

g. **Cost of Housing for Seraphim Employees**

Randy Hook family ($2,070 per month rent February through May).............$8,280.00
Michael Hightower family ($2,210.00 per month rent)..................................$8,840.00
**Total ..................................................................................................$17,120.00**

**Total Termination Expenses ..........................................$226,246.00**

---

[1] Randy Hook and Michael Hightower family travel also includes travel for Messrs. Hook and Hightower to return to the United States in order to accompany their families to Kuwait.

59. According to the Amendment of Solicitation/Modification of Contract effective 20 December 2005, if the contract had not been terminated, Seraphim would have earned minimum revenues of $3,500,002.

60. Seraphim estimates that its net profit would have been 23.72 percent of revenues or $830,200.

61. As a consequence of the Government's termination of Seraphim's contract for its convenience, Seraphim lost profits of $830,200.

62. On 31 October 2006, Seraphim submitted a Termination Proposal (Exhibit C), which was deemed denied when the U.S. Army made no response.

## Count I: Failure to Pay Appropriate Termination for Convenience Costs

63. Plaintiff repeats and realleges all of the allegations contained in paragraphs 1 through 62 as if set forth at length herein.

64. Due to the Contracting Officer's failure to issue a Final Decision on Plaintiff's Termination Claim within 60 days as allowed by the CDA, Plaintiff's claim is deemed denied.

65. Plaintiff demand judgment against Defendant in the sum of $226,246 for settlement expenses which are due to be paid and further demands attorney's fees and costs pursuant to the Equal Access to Justice Act and statutory interest.

## Count II: Bad Faith

66. Plaintiff repeats and realleges all of the allegations

contained in paragraphs 1 through 65 as if set forth at length herein.

67. Defendant's termination of the contract was motivated by bad faith or constituted an abuse of discretion.

68. As a consequence of the Government's bad faith termination of Seraphim's contract for its convenience, Seraphim lost profits of $830,200.

69. Plaintiff demands judgment against Defendant in the sum of $830,200 for damages caused by Defendant's termination and further demands attorney's fees and costs pursuant to the Equal Access to Justice Act and statutory interest.

## Count III: Breach of Covenant of Fair Dealing and Cooperation

70. Plaintiff repeats and realleges all of the allegations contained in paragraphs 1 through 67 as if set forth at length herein.

71. Plaintiff demands judgment against Defendant in the sum of $830,200 for damages caused by Defendant's breach of its duty of fair dealing and cooperation and further demands attorney's fees and costs pursuant to the Equal Access to Justice Act and statutory interest.\

WHEREFORE, Plaintiff demands judgment against Defendant as follows:

A. Under Count I, $226,246 in compensatory damages, interest, attorney's fees and costs;

B. Under Count II, $830,200 in compensatory damages, interest, attorney's fees and costs;

C. Under Count III, $830,200 in compensatory damages, interest, attorney's fees and costs.

Respectfully submitted,

Dated: 7 June 07

Signed: Michael J. Trevelline, DC Bar # 437454
Address: 1823 Jefferson Place, NW
Washington, DC 20036-2504
Telephone: (202) 737-1139/Fax: (202) 775-1118
Email: mjt@mjtlegal.com

Attorney for **Plaintiff Seraphim Transport Co.**

3 Exhibits:
A. First page of the Contract
B: Amendment of Solicition/Modification of Contract
C. Termination Proposal.

**SOLICITATION/CONTRACT/ORDER FOR COMMERCIAL ITEMS**
*OFFEROR TO COMPLETE BLOCKS 12, 17, 23, 24, AND 30*

1. REQUISITION NUMBER: W91XRV 5246 0399

PAGE 1 OF 26

| 2. CONTRACT NO. | 3. AWARD/EFFECTIVE DATE | 4. ORDER NUMBER | 5. SOLICITATION NUMBER | 6. SOLICITATION ISSUE DATE |
|---|---|---|---|---|
| W912D1-06-C-0018 | 01-Dec-2005 | | W912D1-06-R-0017 | 10-Nov-2005 |

7. FOR SOLICITATION INFORMATION CALL: a. NAME: COCKERHAM, JOHN L MAJ — b. TELEPHONE NUMBER *(No Collect Calls)*: 011-965-389-2136 — 8. OFFER DUE DATE/LOCAL TIME: 12:00 AM 15 Nov 2005

ED BY — CODE: W912D1
U.S. ARMY CONTRACTING COMMAND SWA-KUWAIT
HQ BLDG 216 ATTN:MR. SCHENK 965-389-2334
CP ARIFJAN AE 09366

TEL: 011-965-389-2334
FAX: 011-965-389-2333

10. THIS ACQUISITION IS
[X] UNRESTRICTED
[ ] SET ASIDE: % FOR
[ ] SMALL BUSINESS
[ ] HUBZONE SMALL BUSINESS
[ ] 8(A)
NAICS: 312112
SIZE STANDARD:

11. DELIVERY FOR FOB DESTINATION UNLESS BLOCK IS MARKED
[ ] SEE SCHEDULE

12. DISCOUNT TERMS: .05% if paid in 3 days of invoicing

[ ] 13a. THIS CONTRACT IS A RATED ORDER UNDER DPAS (15 CFR 700)

13b. RATING

14. METHOD OF SOLICITATION: [ ] RFQ [ ] IFB [X] RFP

15. DELIVER TO — CODE:
CFLCC C4
SHOEMAKE, DERRICK
CAMP ARIFJAN
KUWAIT AE 09366

16. ADMINISTERED BY — CODE:
**SEE ITEM 9**

17a. CONTRACTOR/ OFFEROR — CODE: 422XJ1
SERAPHIM TRANSPORT CO
MICHAEL D. HIGHTOWER
18507-21ST STREET, KPN
P.O. BOX 273
LAKE BAY WA 98349-0273
LAKEBAY, WA 98349-0273

TEL. 965-694-0063 — FACILITY CODE:

18a. PAYMENT WILL BE MADE BY — CODE: S09076
ARCENT-KU-FINANCE SUPPORT UNIT
ATTN: COMMERCIAL ACCOUNTS
011-965-389-1396
APO AE 09366

[ ] 17b. CHECK IF REMITTANCE IS DIFFERENT AND PUT SUCH ADDRESS IN OFFER

18b. SUBMIT INVOICES TO ADDRESS SHOWN IN BLOCK 18a. UNLESS BLOCK BELOW IS CHECKED [ ] SEE ADDENDUM

| ITEM NO. | 20. SCHEDULE OF SUPPLIES/ SERVICES | 21. QUANTITY | 22. UNIT | 23. UNIT PRICE | 24. AMOUNT |
|---|---|---|---|---|---|
| | **SEE SCHEDULE** | | | | |

25. ACCOUNTING AND APPROPRIATION DATA: Schedule

26. TOTAL AWARD AMOUNT (For Govt. Use Only): $0.00

[ ] 27a. SOLICITATION INCORPORATES BY REFERENCE FAR 52.212-1, 52.212-4. FAR 52.212-3, 52.212-5 ARE ATTACHED. ADDENDA [ ] ARE [ ] ARE NOT ATTACHED

[ ] 27b. CONTRACT/PURCHASE ORDER INCORPORATES BY REFERENCE FAR 52.212-4. FAR 52.212-5 IS ATTACHED. ADDENDA [ ] ARE [ ] ARE NOT ATTACHED

[ ] 28. CONTRACTOR IS REQUIRED TO SIGN THIS DOCUMENT AND RETURN COPIES TO ISSUING OFFICE. CONTRACTOR AGREES TO FURNISH AND DELIVER ALL ITEMS SET FORTH OR OTHERWISE IDENTIFIED ABOVE AND ON ANY ADDITIONAL SHEETS SUBJECT TO THE TERMS AND CONDITIONS SPECIFIED HEREIN.

[ ] 29. AWARD OF CONTRACT: REFERENCE OFFER DATED . YOUR OFFER ON SOLICITATION (BLOCK 5), INCLUDING ANY ADDITIONS OR CHANGES WHICH ARE SET FORTH HEREIN, IS ACCEPTED AS TO ITEMS:

30a. SIGNATURE OF OFFEROR/CONTRACTOR: [signature]

30b. NAME AND TITLE OF SIGNER *(TYPE OR PRINT)*: Partner

30c. DATE SIGNED: 19 Dec 05

31a. UNITED STATES OF AMERICA (SIGNATURE OF CONTRACTING OFFICER): John L. Cockerham

31c. DATE SIGNED: 19-Dec-2005

31b. NAME OF CONTRACTING OFFICER *(TYPE OR PRINT)*: COCKERHAM, JOHN L. MAJ / CONTRACTING OFFICER
TEL: 011-965-389-2136 EMAIL: j

HORIZED FOR LOCAL REPRODUCTION
PREVIOUS EDITION IS NOT USABLE

STANDARD FORM 1449 (REV 4/2002)
Prescribed by GSA
FAR (48 CFR) 53.212

Seraphim0012

EXHIBIT A