Seraphim Transport Co
Your International Transportation Specialis

18507-21st ST, KPN, P.O. Box 273, Lakebay, WA 98349 USA - APO AE 09366 - P.O. Box 76176, 00508, Yaya, Nairobi, Kenya

*Termination Proposal*
*28 October 2006*

28 October 2006

MAJ Marcellus Newson
Deputy Contracting Commander – Military
ASG-KU-DOC (USA CC SWA–KU)
011-965-389-3737
Camp Arifjan, Kuwait
APO AE 9366
marcellus.j.newson@us.army.mil

**RE: Receipt of Termination Proposal of Seraphim Transport Company—Contract W912D-06-C-0018—Claim for Bad Faith Termination and for Breach of Contract**

Dear MAJ Newson:

This is acknowledgment that Seraphim Transport Company, a Small Disadvantaged Veteran Owned Business, has submitted its termination settlement proposal on the above-referenced contract to you on this day in person on Camp Arifjan in Kuwait.

Your acknowledgment by signing and dating information herein below:

Dyitteye, Ousmane (for MAJ Newson) 31 Oct 2006

Name (print in full) Date

[signature]

Signature

Admin, CIV.

Title/Rank

cc: Mr. Michael J. Trevelline, Attorney-at-Law
Mr. Robert A. Klimek, Jr., Attorney-at-Law
Lt. Colonel James A. Blanco, Assistant to the Director Office of Small and Disadvantaged Business Utilization
The Honorable U.S. Representative Norman D. Dicks

EXHIBIT
tabbies
C

Seraphim Transport Co

Your International Transportation Specialis

18507-21st ST, KPN, P.O. Box 273, Lakebay, WA 98349 USA - APO AE 09366 - P.O. Box 76176, 00508, Yaya, Nairobi, Kenya

28 October 2006

MAJ Marcellus Newson
Deputy Contracting Commander – Military
ASG-KU-DOC (USA CC SWA–KU)
011-965-389-3737
Camp Arifjan, Kuwait
APO AE 9366
marcellus.j.newson@us.army.mil

**RE: Termination Proposal of Seraphim Transport Company—Contract W912D1-06-C-0018—Claim for Bad Faith Termination and for Breach of Contract**

Dear MAJ Newson:

I am writing on behalf of Seraphim Transport Company ("Seraphim") to submit its termination settlement proposal on the above-referenced contract. Seraphim is claiming compensation for the costs Seraphim incurred to prepare to meet its obligations under the contract and to wind-down its operations after the contract was terminated. In addition, I am submitting a claim for bad faith termination and for breach of contract. The following brief summary of the contract provides the background needed to understand the expenses incurred.

**Seraphim Transport Company**

Seraphim is a Washington State general partnership of Messrs. Randy Hook and Michael Hightower. In the fall of 2005, these two partners were residing in Kuwait working at well-paid positions for a Kuwaiti firm.

**The Contract and Its Solicitation**

On the morning of 13 November 2005 via email the Army notified Seraphim that it had issued a solicitation for bottled water, with proposals due only three days later at 10:00 am on 16 November 2005 (all times and dates Kuwait). Seraphim submitted a bid (or proposal) at 9:06 am on 16 November 2005. Seraphim was determined to be the low responsive, responsible

offeror, and was accordingly awarded the contract on 19 December 2005.*

The contract was a one-year agreement for the Government's requirements for bottled water to be delivered to various locations in Kuwait and Iraq. The original solicitation provided for a purchase of $17,000,000 worth of water and required warehousing and storage for approx. up to 450,000 cases per month. However, the modification effective 20 December 2005 reduced the contract to $3,500,002 for an annual contract. The contract as modified provided that Seraphim would deliver only 608,696 cases of bottled water to locations to be designated by the Army at the time it requesting particular deliveries. The contract termed these requests "Calls." Pursuant to the contract, Seraphim was required to be able to accept calls twenty-four hours per day and to make deliveries anywhere in Kuwait and Iraq as designated by the Army in the Call. Moreover the contract provided that, outside of total destruction, Seraphim was responsible for damage done to its delivery trucks. The contracting officer was Major John L. Cockerham.

Significantly, the contract required Seraphim to be able to make deliveries immediately upon award of the contract on 19 December 2005. (And in fact as noted below Seraphim did make prompt delivery of significant quantities of water shortly after being awarded the contract.)

**Seraphim Preparation for Performance**

Since the contract required immediate ability to deliver water, Seraphim without delay prepared to perform. It contracted with a supplier to provide bottled water after investigating the supplier's ability to perform bottled water on short notice in the quantities required by the Government. Likewise, Seraphim negotiated with transportation companies to supply trucks after diligently investigating them to assure they had the ability and wherewithal to transport bottled water on short notice in the quantities required by the Government to any location in Iraq. Since several transportation companies were

* Seraphim was told by responsible procurement officials that its price was almost half of that of the next lowest bidder.

available and able to supply trucks on short notice, Seraphim shrewdly made known to the companies that they were competing. As well, Seraphim contracted for office and warehouse space.

Seraphim was able to minimize the damage to the Government since upon notice of termination, Seraphim was able to negotiate early termination of all of its supply contracts. As a consequence, Seraphim's termination settlement proposal does not include any contractual penalties or breach of contract damages for its subcontractors.

As soon as the contract was awarded, Seraphim contracted for employees. Seraphim contracted for five employees to service the contract for one year. The five include the two Seraphim principals.

**Seven Employment Contracts**

Seraphim entered into seven employment contracts and Seraphim limits its claim to a small part of its obligations under five of these contracts. Randy Hook was to work full-time as a contract manager. Mr. Hook's compensation for the year was set at $144,000 as well as a $10,000 signing bonus and a $10,000 completion bonus. The salary of $144,000 breaks down to weekly pay of $2,769. Michael Hightower was also hired to work full-time as an operations manager. Mr. Hightower's compensation for the year was set at $120,000 and the same $20,000 in bonuses. His $120,000 annual salary breaks down to weekly pay of $2,307.

Seraphim employed JerryJoe Hook and brought him to Kuwait from the United States in January 2006 to work as freight supervisor and driver. His annual salary was $92,000, with $20,000 in the same bonuses. His annual salary of $92,000 breaks down to weekly pay of $1,789. Seraphim employed Anthony Hook as a freight supervisor. His annual salary was $92,000, with $20,000 in the same bonuses. Thus, his annual salary of $92,000 breaks down to weekly pay of $1,789. Seraphim employed Wanda Cirrincione and brought her to Kuwait from the United States to work as warehouse attendant and ordering supervisor. Her annual salary was $92,000, with

$20,000 in the same bonuses. Thus, her annual salary of $92,000 breaks down to weekly pay of $1,789.

Seraphim employed Saadia Omar Haji Musa and Umesha Balasuriya to work part-time as warehouse attendants/office clerks when Ms. Cirrincione was unavailable or needed assistance. Their annual salary was $11,000 each, with no bonuses or benefits. They performed no duties relevant to the contract. As such, Seraphim is not making a claim for costs incurred under their employment contracts.

Seraphim offered salaries and benefits in line with contractor employment of U.S. expatriates in Kuwait. A $10,000 signing bonus and a $10,000 completion bonus is well within the recognized business practice of other government contractors. The completion bonuses are owing since the employment agreements provide that completion bonuses are due and owing when non-completion is not the fault of the employee. Seraphim paid the cost of bringing two employees from the United States to Kuwait—JerryJoe Hook, and Wanda Cirrincione. As well, Seraphim undertook to transport the immediate family of its employees to Kuwait and to provide housing for all employees and their families.

**Work Completed Under the Contract**

Seraphim began operations promptly after being awarded the contract on 19 December 2005 and received a call for 40,000 cases of one-half liter bottles of water in late January 2006. Seraphim promptly deliver the 40,000 case of water to a location in Iraq on time. Accordingly, pursuant to the contract, Seraphim billed the Army $230,000 for the water (40,000 x $5.75). Seraphim has received payment.

**Termination of the Contract**

In late January 2006, Major Momon, Contract Administrator, sent an email to Seraphim stating he was reviewing the contract. In an email of 2 February 2006, Seraphim responded stating that it was a small disabled-veteran minority-owned business. In response to this, Contracting Officer Schenk terminated the contract for the convenience of the government on 8 February 2006.

After meeting with Seraphim, Lt Colonel James Blanco, Assistant to the Director, Small Business Program Office, Secretary of the Army, wrote to Major Momon on 16 February 2006 stating in part:

"After reviewing documentation provided by Mr. Hook to include the contract, mods and termination letter, we find it challenging to determine your rationale for the Termination for Convenience (TforC). This is (sic) situation is further troubling because it appears that Seraphim, a small, Service-Disabled Veteran-Owned Small Business (SDVOSB), will be forced to leave the theater because of the economic hardship caused by terminating Contract W912D1-06-C-0018."

Thus, Lt Colonel Blanco expressed the obvious fact that termination would force Seraphim to leave the theater, causing substantial termination damages.

**Winding Up of the Contract**

Following termination, Seraphim wound up operations, doing its best to mitigate damages. After seeking reconsideration through Lt Colonel Blanco and after seeking alternate contracts, it returned the employees brought from the United States back home. It worked to obtain and obtained gratuitous consents to terminate early its one-year supply contracts with its subcontractors. Messrs. Hook and Hightower are currently actively seeking employment in the United States and elsewhere as well as having Seraphim bid on other contracts, all without success at this time.

Messrs. Hook and Hightower worked each a total of eleven weeks on this contract—seven during the period of the contract from 19 December 2005 to 8 February 2006 and four during the winding up period from 8 February 2006 to 8 March 2006. Ms. Wanda Cirrincione earned two weeks of salary by traveling to Kuwait. Mr. Anthony Hook earned two weeks of salary. Mr. JerryJoe Hook earned five weeks of salary by traveling to Kuwait and performing services. As soon as Seraphim determined that it would be unable to assign these employees to other work, their employment was termination.

Seraphim was then obligated to return these employees to the United States.

Seraphim's claim then is limited to the following:

a. **Randy Hook Compensation**

| Bonuses | $2,769 in salary for 11 weeks worked | **Total Randy Hook Compensation** |
|---|---|---|
| $20,000 | $30,459 | **$50,459** |

b. **Michael Hightower Compensation**

| Bonuses | $2,307 in salary for 11 weeks worked | **Total Michael Hightower Compensation** |
|---|---|---|
| $20,000 | $25,377 | **$45,377** |

c. **JerryJoe Hook Compensation**

| Bonuses | $1,789 in salary for 5 weeks worked | **Total JerryJoe Hook Compensation** |
|---|---|---|
| $20,000 | $8,945.00 | **$28,945.00** |

d. **Anthony Hook Compensation**

| Bonuses | $1,789 in salary for 2 weeks available to work | **Total Anthony Hook Compensation** |
|---|---|---|
| $20,000 | $3,578 | **$23,578** |

e. **Wanda Cirrincione Compensation**

| Bonuses | $1,789 in salary for 2 weeks available to work | **Total Wanda Cirrincione Compensation** |
|---|---|---|
| $20,000 | $3,578 | **$23,578** |

f. **Cost of Air Transportation between Kuwait and United States**

| | |
|---|---|
| Randy Hook family (Umesha S. Balasuriya, Maniesha R.B. Hook, Japheth I. Hook, Hannah N. Hook) (Seattle, Washington) | $17,050.00 |
| Michael Hightower family (Saadia Hightower, Janai Hightower) (Nashville, Tennessee) | $14,722.00* |
| JerryJoe Hook (Seattle, Washington) | $2,758.00 |
| Wanda Cirrincione (Seattle, Washington) | $2,659.00 |
| **Total** | **$37,189.00** |

g. **Cost of Housing for Seraphim Employees**

| | |
|---|---|
| Randy Hook family ($2,070 per month rent February through May) | $8,280.00 |
| Michael Hightower family ($2,210.00 per month rent) | $8,840.00 |
| **Total** | **$17,120.00** |

**Total Termination Claim .................................................. $226, 246.00**

**Claim for Bad Faith Termination and Breach of Contract**

According to the Amendment of Solicitation/Modification of Contract effective 20 December 2005, if the contract had not been terminated, Seraphim would have earned minimum revenues of $3,500,002. Seraphim estimates that its net profit would have been 23.72 percent of revenues or $830,200. As a consequence of the Government's bad faith termination of Seraphim's contract for its convenience resulted in minimum lost profits to Seraphim of $830,200.

Please write with any questions.

**33.207 Contractor Certification**

I certify that the claim is made in good faith; that the supporting data are accurate and complete to the best of my knowledge and belief; that the amount requested accurately reflects the contract adjustment for which the contractor believes the Government is liable; and that I am duly authorized to certify the claim on behalf of the contractor.

* Randy Hook and Michael Hightower family travel also includes travel for Messrs. Hook and Hightower to return to the United States in order to accompany their families to Kuwait.

Very truly yours,

Randy G. Hook

cc: Mr. Michael J. Trevelline, Attorney-at-Law
Mr. Robert A. Klimek, Jr., Attorney-at-Law
Lt. Colonel James A. Blanco, Assistant to the Director Office of Small and Disadvantaged Business Utilization
The Honorable U.S. Representative Norman D. Dicks

7 October 2006

MAJ Marcellus Newson
011-965-389-3737
Department of the Army
Southwest Asia Contracting Command—Kuwait
TP346, Camp Arifjan, Kuwait
APO AE 9366

**RE: Receipt of Termination Proposal of Seraphim Transport Company—Contract W912D-06-C-0018—Claim for Bad Faith Termination and for Breach of Contract**

Dear MAJ Newson:

This is acknowledgment that Seraphim Transport Company, a Small Disadvantaged Veteran Owned Business, has submitted its termination settlement proposal on the above-referenced contract to you on this day in person on Camp Arifjan in Kuwait.

Your acknowledgment by signing and dating information herein below:

MARCELLUS NEWSON ____________ 5 OCT 06, 1530 HRS ____________
Name (print in full) Date

[signature] ____________ MAJ / DCO ____________
Signature Title/Rank

cc: Mr. Michael J. Trevelline, Attorney-at-Law
Mr. Robert A. Klimek, Jr., Attorney-at-Law
Lt. Colonel James A. Blanco, Assistant to the Director Office of Small and Disadvantaged Business Utilization
The Honorable U.S. Representative Norman D. Dicks

Seraphim Transport Co.

Your International Transportation Specialists

18507-21st ST, KPN, P.O. Box 273, Lakebay, WA 98349 USA - APO AE 09366 - P.O. Box 76176, 00508, Yaya, Nairobi, Kenya

28 October 2006

MAJ Marcellus Newson
Deputy Contracting Commander – Military
ASG-KU-DOC (USA CC SWA–KU)
011-965-389-3737
Camp Arifjan, Kuwait
APO AE 9366
marcellus.j.newson@us.army.mil

**RE: Receipt of Termination Proposal of Seraphim Transport Company—Contract W912D-06-C-0018—Claim for Bad Faith Termination and for Breach of Contract**

Dear MAJ Newson:

This is acknowledgment that Seraphim Transport Company, a Small Disadvantaged Veteran Owned Business, has submitted its termination settlement proposal on the above-referenced contract to you on this day in person on Camp Arifjan in Kuwait.

Your acknowledgment by signing and dating information herein below:

MARCELLUS JEROME NEWSON — 3 Nov 06

Name (print in full) — Date

[signature] — DCO, MAJ

Signature — Title/Rank

cc: Mr. Michael J. Trevelline, Attorney-at-Law
Mr. Robert A. Klimek, Jr., Attorney-at-Law
Lt. Colonel James A. Blanco, Assistant to the Director Office of Small and Disadvantaged Business Utilization
The Honorable U.S. Representative Norman D. Dicks