# In The United States Court of Federal Claims

| | |
|---|---|
| **Seraphin Transport Co.** | |
| Plaintiff, | Case No. 07-359C |
| vs. | Judge Francis M. Allegra |
| **The United States** | |
| Defendant | |

## Opposition to Defendant's Motion to Dismiss

Seraphim Transport Co., Plaintiff, provides this memorandum of points & authorities in opposition to the Motion to Dismiss.

## I. Summary

The Government argues that the contract Seraphim is suing under is a not a contract but a mere Blanket Purchase Agreement (BPA) so that there is no contract for Seraphim to make a claim under. (Motion to Dismiss at 8.) The Government grossly misstates the cases it cites and fails to apply the facts of this case to the law. The cases cited by the Government do not discuss contracts with a minimum purchase provision, a provision the Government admits is in Seraphim's contract (Motion to Dismiss at 3, 4.). Such a contract is not a BPA, but an indefinite-delivery, indefinite-quantity (IDIQ) contract when it imposes on the government a minimum purchase requirement. See, e.g., Travel Centre v. Barram, 236 F.3d 1316, 1319 (Fed. Cir. 2001). Therefore, there is a contract between the Government and Seraphim and the Government's motion must be denied.

## II. Facts

Operating at U.S. Army Camp Arifjan, Kuwait, a contracting officer Major John L. Cockerham awarded Seraphim a one-year $17,000,000 contract to provide bottled water to various locations in Kuwait and Iraq. (Amended Complaint at ¶¶ 5-7; the solicitation and original contract is found at the appendix to the Motion to Dismiss.) When Seraphim refused to pay Major Cockerham a bribe, Major Cockerham modified the contract reducing it from $17,000,000 to $3,500,002. (Amended Complaint at ¶ 8; Exhibit A, Affidavit of Michael Hightower at ¶ 3.) (The amended contract is attached as Exhibit B to the Amended Complaint.) Major Cockerham then awarded the remaining $13,499,998 ($17,000,000-$3,500,002=$13,499,998) of the Government's water requirements to competitors of Seraphim who were willing to pay a bribe and who in fact did pay a bribe. (Exh. B, Indictment of Major Cockerham at ¶¶ 20 et seq.)

The modified contract contains several relevant terms. It was obtained through a request for proposals solicitation. It is for one year with four one-year options to renew. It establishes the price to be paid for bottled water and contemplates the Government making calls for delivery under the contract. It provides for two minimum purchases by the Government—a minimum of 20,000 cases of water and a minimum of 1,000 cases per week for 4 weeks.

The contract is numbered W912D1-06-C-0018. Under the Defense Federal Acquisition Regulation 48 C.F.R. § 204.7003, the letter "C" in the contract number indicates: "Contracts of all types except indefinite delivery contracts, facilities contracts, sales

contracts, and contracts placed with or through other Government departments or agencies or against contracts placed by such departments or agencies outside the DoD." The contract number does not contain the letter "A," which would have indicated a BPA, nor does it contain the letter "D," which would have indicated an indefinite delivery contract.

Corrupt Government contracting officials commonly employ the technique of placing inconsistent provisions in contracts so that when a contractor refuses to pay a bribe, the official can point to the inconsistent provisions as grounds for cancelling the contract. (Exh. A, Affidavit of Michael Hightower at ¶ 6.)

Approximately one month after awarding the contract, the Government made calls under the contract, received the water as agreed, and paid as agreed; these calls were in excess of the minimum purchases required in the contract. (Amended Complaint at ¶¶ 38-41.)

In January 2006, a Major Momon of the Camp Arifjan contracting office asked Seraphim to pay him a bribe. (Exh. A, Affidavit of Michael Hightower at ¶ 4.) After Seraphim refused to pay a bribe, Major Momon sent an email to Seraphim saying he was reviewing the contract. (Amended Complaint at ¶ 42; Exh. A, Affidavit of Michael Hightower at ¶ 4.) When Seraphim still did not pay a bribe, a Camp Arifjan contracting officer cancelled the contract for convenience of the Government. (Exh. A, Affidavit of Michael Hightower at ¶ 4; Amended Complaint at ¶ 44.)

## III. Law & Argument

**Can a contract be a BPA when it requires the**

**Government to make a minimum purchase?**

The Government argues that the contract is a BPA for two reasons. First, the Government quotes BPA language from Paragraph 5 of the scope of work (SOW) section of the contract. The Government argues that since this paragraph says that the Government is only obligated to pay for what is ordered, the contract can only be a BPA. (Motion to Dismiss at 8.) Second, the Government argues that the conduct of the parties can only be consistent with a BPA since the Government only paid for what it ordered. (Motion to Dismiss at 8.)

Both arguments are patently fallacious. As for the argument that the BPA language is dispositive, the Government ignores both the fact of a key provision in the contract and the law of contract interpretation. As well, the Government misstates the holdings of case law. The Government informs the Court that two cases stand for the proposition that when an agreement obligates the Government only for orders actually placed, then it is a BPA, not a contract, **irrespective of whether the contract requires the Government to place a minimum of orders.** (Motion to Dismiss at 7-8.) Neither of the two cases interpreted a contract requiring a minimum purchase. Zhengxing v. United States, 71 Fed. Cl. 732 (2006), aff'd 204 Fed. Appx. 885 (Fed. cir. 2006); Modern Systems Technology Corp. v. United States, 24 Cl. Ct. 360 (1991), aff'd 979 F.3d 200 (Fed. Cir. 1992). The Government has misstated the holdings of these cases.

Contrary to the Government's miss-citation to authority, under the law of contract interpretation, the minimum purchase

provision is of paramount importance, making the agreement a contract, not a BPA. BPAs are not contracts because they lack mutuality of consideration. Zhengxing v. United States, 71 Fed. Cl. at 738. The Government has no obligation to make a purchase under a BPA so it provides no consideration. Such mutuality exists, however, where both parties are obliged—where the Government is obliged to make a minimum purchase and the contractor to provide the good or service. See, e.g., Flink/Vulcan v. United States, 63 Fed. Cl. 292, 298 (2004). In Flink/Vulcan, the court found the contract was a BPA (although not using that term) where no minimum purchase provision existed. Id. at 300-01. Mutuality existed here where a minimum purchase provision existed.

In determining whether a contract existed and what type of contract it was, courts again and again place the greatest emphasis on the inclusion of a minimum purchase provision. The import of such a term cannot be overemphasized. For example, the Federal Circuit has said:

> This court next analyzes the merits of interpreting this agreement as an indefinite quantity contract. While many factors are relevant, including the absence of FAR-mandated "indefinite quantity" clause, this court cannot read this agreement as an indefinite quantity contract because it lacks a minimum quantity term. Regardless of whether the contract is susceptible to interpretation as an indefinite quantity contract, a contract lacking this term cannot be construed as a valid indefinite quantity contract.

Coyle's Pest Control, Inc. v. Cuomo, 154 F.3d 1302, 1306 (1998).

The only question, then, before this Court is whether the inclusion in the contract of the title BPA and the standard BPA

paragraph makes the contract a BPA despite it requiring the Government to make minimum purchases? The law of contract interpretation is dispositive of this question. In rejecting the Government's argument that a contract was an IDIQ contract rather than a requirements contract, this Court stated the applicable law of contract interpretation:

> In determining which type of contract was entered into by the parties, the court will be guided by three contract interpretation rules in particular. First, the court is not bound by the name or label given to a contract. Rather, it must look beyond the first page of the contract to determine what were the legal rights for which the parties bargained, and only then characterize the contract. Second, an interpretation that gives meaning to all parts of the contract is preferable to one which renders provisions in the contract meaningless or superfluous. "Contracts are instruments of commerce and one ought to assume, therefore, that the language they recite was drafted with necessities of the transaction in mind." Bel Pre Health Care Center, Inc. v. United States, 24 Ct. Cl. 495, 498 (1991). Third, because it must be assumed that the parties intended to forma a binding contract, the court should favor an interpretation that saves the contract instead of voiding it. If a contract is susceptible of interpretation as either a requirements contract or an indefinite quantity contract, the court should uphold it as being a requirements contract. In any event, "[t]here is no surer way to find out what the parties meant, than to see what they have done." Insurance Co. v. Dutcher, 95 U.S. 269, 273, 24 L.Ed. 410 (1877).
>
> … An indefinite quantities contract is a contract under which the buyer agrees to purchase and the seller agrees to supply whatever quantity of goods the buyer chooses to purchase from the seller. To make such contracts enforceable, the buyer must agree to purchase from the seller at least a guaranteed minimum quantity of goods or services. If the contract contains such a minimum quantity clause, the buyer is required to purchase at least this minimum amount, but this is the extent of his legal obligation. He can purchase

> more if he chooses to but is under no obligation to do so. …
>
> In urging the court to find the contract to be for indefinite quantities, the government stresses the fact that the contract labels itself as an indefinite quantities contract and included an indefinite quantities contract clause. The language the government relies on simplistically suggests that the parties entered into such a contract. Case law warns that reliance on labels and contract provision is most risky. In any event, the determination of the type of contract the parties entered into is a matter of law and is not controlled by any label or contract provision. Other than the contract language referred to above the government offers nothing else to persuasively bolster its position that the court should deem the contract to be one for indefinite quantities. Merely because the contract at issue contains an indefinite quantity provision does not, without more, require that it be deemed an indefinite quantity contract.
>
> The undisputed facts do not support the government's argument on the issue of characterization. The contract does not contain any minimum quantity provision necessary to enforce an indefinite quantity contract. Without such a provision the contract is illusory and unenforceable. … As indicated earlier, courts favor validating contracts, not invalidating them, especially when the contract has been fully performed.

Crown Laundry & Dry Cleaners, Inc. v. U.S., 29 Fed. Cl. 506, 515-17 (1993) (citations omitted). In addition, ambiguous contract language is be construed against the author—the Government on this contract. Id. at 516 n. 3.

The Government places great emphasis on paragraph 5 of the SOW. (Motion to Dismiss at 3 & 8.) Paragraph 5 provides that the Government is only liable for calls made and is not liable when no calls are made. The Government argues in effect that this one provision is dispositive, that the minimum purchase provision is to be read out of the contract, that no attempt is to be made to

reconcile BPA language with the minimum purchase language. As seen above, the law of contract interpretation is quite to the contrary. Paragraph 5 can be read to be wholly consistent with the minimum purchase provisions. Paragraph 5 speaks only to the payment of calls that have been placed, it does not address whether or not the Government is required to make calls. Such is addressed in the minimum purchase provision. Since the two provisions can be read consistently, this Court is obliged to do so. Crown Laundry & Dry Cleaners, Inc., 29 Fed. Cl. at 515.

Unawares, the Government agrees that the course of dealing indicates that the contract was an IDIQ contract. It admits that the solicitation contains minimum purchase provisions (Motion to Dismiss at 3) and that the amended contract also contained these provisions (Motion to Dismiss at 4), and that Seraphim delivered water in response to calls in excess of the minimum (Motion to Dismiss at 4). The implication is that the Government has ordered the minimum; therefore, it has upheld its part of the bargain. The Government fails to comment on what Seraphim's rights would be should the Government not have ordered the minimum. The Government dare not answer this question or even to discuss it.

## IV. Conclusion

WHEREFORE, since the contract contained a minimum purchase provision, the contract contained mutuality of consideration and so was not a mere BPA, but an enforceable contract so that this Court does have jurisdiction.

Respectfully submitted,

Dated: _2 November 2007_ Signed: __s/Michael Trevelline______________
Michael J. Trevelline, DC Bar # 437454
Address: 1823 Jefferson Place, NW
Washington, DC 20036-2504
Telephone: (202) 737-1139/Fax: (202) 775-1118
Email: mjt@mjtlegal.com

Attorney for **Plaintiff Seraphim Transport Co.**

2 Exhibits:
A. Affidavit of Michael Hightower
B. Indictment of Major Cockerham

## Certificate of Filing

I hereby certify that on this **_2nd_** day of **_November, 2007.** a copy of the foregoing was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

__s/Michael Trevelline__________

# **Index of Exhibits**

Affidavit of Michael Hightower ........................................................................A
Indictment of Major John L. Cockerham..................................................................B