# In The United States Court of Federal Claims

| | |
|---|---|
| **Seraphin Transport Co.**<br>Plaintiff,<br>vs.<br>**The United States**<br>Defendant | Case No. 07-359C<br>Judge Francis M. Allegra |

## Affidavit of Michael Hightower

State of Tennessee )
) ss:
County of Davidson )

I, Michael Hightower, being duly sworn, do hereby depose and say:

1. I am over the age of 18 and am competent to testify and to make this affidavit and make this affidavit from personal knowledge. I am a partner of Seraphim Transport Co, the Plaintiff in the above-captioned matter. I have read the Amended Complaint in this matter, know it to be true and adopt it as part of this affidavit.

2. In December of 2005, I was employed and living in Kuwait near U.S. Army Camp Arifjan. Approximately one week after submitting the contract proposal described in the Amended Complaint, Major John Cockerham, the Army contracting officer, called me and said that Seraphim was being awarded the contract. On 19 December, Major Cockerham called me again to ask me to come in that evening and to sign the contract. I went to the



EXHIBIT
tabbies
A

contracting office at around 18:00 or 18:30 in the evening. Major Cockerham was conducting other business with vendors on the phone and in person while at the same time preparing the contract on a computer. With no one else present, I signed the contract. Major Cockerham shook my hand and said "Now, what are you going to do for me." I thought it a joke and laughed and left. I now know that it was no joke. At that time, I had no knowledge of Major Cockerham taking bribes from contractors. Major Cockerham was reassigned back to the United States a few days later.

3. When I did not pay Major Cockerham a bribe, the very next day he modified the contract by reducing it from $17,000,000 to $3,500,000. As seen on his indictment, at this time, Major Cockerham caused the Government to purchase water from Seraphim's competitor water suppliers, suppliers who did pay Major Cockerham bribes totaling hundreds of thousands of dollars.

4. In or about early January 2006, I meet Major James Momon Jr., a U.S. Army contracting specialists working at Camp Arifjan in the parking lot of the PX. He asked me "what type of agreement do you have with Major Cockerham because we have someone who can get money back to the States." I understand by this that he was asking me for a bribe. I told him that I was not giving any money for a contract . Not long after this when I did

not pay a bribe on 2 February Major Momon sent me an email saying that the contract was under review. Then on 8 February the Army cancelled the contract without explanation. Apparently the cancellation was done in retaliation for me refusing to pay a bribe.

5. I know of another contractor who was also told in 2006 that it was to receive a termination for cause. That contractor told Major Momon that if it received a termination it would tell the legal authorities of Major Momon's corruption. The contract was not terminated.

6. In writing the contract with Seraphim, Major Cockerham intentionally included contradictory provisions so that if Seraphim later refused to pay a bribe, then the Government could point to the errors as grounds for cancelling the contract. I believe he did this intentionally since this is a technique used by corrupt contracting officials in Kuwait.

Michael Hightower

Subscribed and sworn to before me this 2 day of November, 2007.

NOTARY PUBLIC

My Commission Expires: MY COMMISSION EXPIRES JANUARY 24, 2009

STATE OF TENNESSEE NOTARY PUBLIC DAVIDSON COUNTY

*Affidavit of Mr Michael Hightower—Page 3 of 3*

This document is available in two formats: this web page (for browsing content) and PDF (comparable to original document formatting). To view the PDF you will need Acrobat Reader, which may be downloaded from the Adobe site. For an official signed copy, please contact the Antitrust Documents Group.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

UNITED STATES OF AMERICA,

v.

1) JOHN COCKERHAM, JR.,

2) MELISSA COCKERHAM,

3) CAROLYN BLAKE,
A.K.A. CAROL BRADSHAW,

Defendants.

Criminal No.

Count One: 18 U.S.C. § 371
(Conspiracy)

Count Two: 18 U.S.C. § 201
(Bribery)

Count Three: 18 U.S.C. § 201
(Bribery)

Count Four: 18 U.S.C. § 201
(Bribery)

Count Five: 18 U.S.C. § 1956(h)
(Money Laundering Conspiracy)

Count Six: 18 U.S.C. § 371
(Conspiracy)

Criminal Forfeiture
18 U.S.C. §§ 981(a)(l)(C), 982
28 U.S.C. § 2461(c)

Stamp: FILED

2007 AUG 22 P400

CLERK, US DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY ________/s/________
DEPUTY

EXHIBIT
B

**INDICTMENT**

The Grand Jury charges that at all times relevant to the Indictment:

**BACKGROUND**

1. From at least in or about June 2004 until in our about July 2007, John Cockerham, Jr. ("COCKERHAM") was employed by the Department of Defense ("DoD") as a Major in the United States Army attached to the Army Contracting Activity, Fort Sam Houston Army Post in Texas. From on or about June 30, 2004, through late December 2005, COCKERHAM was deployed to Camp Arifjan, Kuwait, serving as a Contracting Officer. As an Army Officer assigned to a contracting office, COCKERHAM was responsible for soliciting and reviewing bids for DoD contracts in support of Army operations in the Middle East, including Operation Iraqi Freedom, and awarding contracts to DoD contractors to provide those goods and services.

2. COCKERHAM worked on contracts and numerous blanket purchase agreements ("BPAs"), which are indefinite delivery, indefinite quantity contract vehicles by which DoD agrees to pay a contractor a specified price for a partictilar good or service. The BPA then allows the DoD to order that good or service in whatever quantity, and the contractor is bound by the price agreed upon in the BPA. When requests are made under a BPA, they are referred to as "calls." DoD used the BPAs to purchase, among other things, bottled water destined for soldiers serving in Kuwait and Iraq. Under a BPA, the total value of the goods and services that might be called under the contract was usually capped. For bottled water, the monetary cap per contractor was $10 million.

3. Melissa Cockerham ("M. COCKERHAM") is a United States citizen married to COCKERHAM who resided at the Fort Sam Houston Army Post. While COCKERHAM was deployed to Kuwait, M. COCKERHAM visited her husband on at least two occasions.

4. Carolyn Blake ("BLAKE") is a United States citizen who lived in Sunnyvale, Texas and Kuwait City, Kuwait during the relevant time period. BLAKE is COCKERHAM'S sister.

5. Co-conspirator One is a personal friend of COCKERHAM, who lived in San Antonio, Texas.

6. Co-conspirator Contractors A, B, and C provided various goods and services to DoD, including bottled water, at Camp Arifjan, Kuwait and elsewhere. The principal of Co-conspirator Contractor B utilized multiple companies when seeking contracts from DoD.

7. Whenever in this Indictment reference is made to any act, deed or transaction of any corporation, the allegation means that the corporation engaged in the act, deed, or transaction by or through its officers, directors, agents, employees, or other representatives while they were actively engaged in the management, direction, control or transaction of its business or affairs.

**COUNT ONE**
**18 U.S.C. § 371**
**(Conspiracy)**

8. Paragraphs 1-7 of the Indictment are realleged and incorporated by reference as though fully set forth herein.

9. From in or about 2004 until in or about July 2007, in the Western District of Texas, Kuwait, the United Arab Emirates, and elsewhere, defendants

**JOHN COCKERHAM, Jr.,**
**MELISSA COCKERHAM,**
**CAROLYN BLAKE**

and others did knowingly and unlawfully combine, conspire, confederate, and agree with others known and unknown to the grand jury to;

a. knowingly and willfully defraud the United States by impairing, impeding, and defeating the lawful functions of the DoD; and

b. commit an offense against the United States, that is, to directly and indirectly, corruptly demand, seek, receive, accept, and agree to receive and accept things of value, that is, among other things, cash, in return for being influenced in the performance of official acts, including awarding DoD contracts to the Co-conspirator Contractors and others at Camp Arifjan, Kuwait in violation of 18 U.S.C. § 201(b)(2)(A).

## THE CONSPIRACY AND ITS OBJECTS

10. It was an object of the conspiracy for COCKERHAM, M. COCKERHAM, BLAKE, Co-conspirator One and others to accept bribe payments from government contractors, to provide the payments to M. COCKERHAM, BLAKE, Co-conspirator One and others and, in return COCKERHAM awarded DoD contracts and BPAs to the bribe payors.

## MANNERS AND MEANS OF THE CONSPIRACY

It was a part of the conspiracy that COCKERHAM, M. COCKERHAM, BLAKE, Co-conspirator One and others would, among other things, do the following:

11. Award Co-conspirator Contractors and others DoD contracts, including bottled water BPAs, through a rigged bidding process, by which COCRERHAM would guarantee that a contractor would receive a contract in return for paying money to COCKERHAM.

12. Make calls on and modifications to various BPA contracts awarded to the Co-conspirator cuntractors in order to generate revenue for the oompanies.

13. Invoice DoD for goods provided ahd services performed under the contracts.

14. Pay cash bribe payments to COCKERHAM, M. COCKERHAM, BLAKE, Co-conspirator One, and others, calculated as either a flat fee or as a "residual" amount per unit item delivered to DoD, totalling approximately $9.6 million.

15. Deposit millions of dollars in bribe money into safe deposit boxes and bank accounts in Kuwait and Dubai in the names of M. COCKERHAM BLAKE and others for the benefit of COCKERHAM.

16. Wire or cause the wire transfer of bribe money to bank accounts for the benefit of COCKERHAM.

**OVERT ACTS**

In furtherance of the conspiracy and in order to accomplish its objects, the following overt acts, among others, were committed by COCKERHAMm M. COCKERHAM, BLAKE, Co-conspirator One, and others in Kuwait, the western District of Texas and elsewhere:

17. In or about August 2004, BLAKE relocated to Kuwait City, Kuwait.

18. On or about October 1, 2004, COCKERHAM issued call modification 006201 on bottled water BPA DABM06-03-A-0045 for Co-conspirator Contractor B, providing $536,300 in additional funding.

19. On or about December 13, 2004, COCKERHAM issued call 0069 on bottled water BPA DABM06-03-A-0045 for Co-conspirator Contractor B in the amount of $625,000.

20. On or about December 27, 2004, COCKERHAM issued modification 0001 on bottled water BPA DABM06-03-A-0045 for Co-conspirator Contractor B, increasing the dollar limit of the BPA from $1,000,000 to $10,000,000.

21. On or about April 1, 2005, COCKERHAM created the award for bottled water BPA W912D1-05-A-0058, which was awarded to Co-conspirator Contractor C with a dollar limzit of $10,000,000.

22. On or about May 17, 2005, COCKERHAM was involved in the award of bottled water BPA W912Dl-05-A-0074 to Co-conspirator Contractor A with a dollar limit of $10,000,000.

23. On or about May 18, 2005, COCKERHAM created call 0004 on bottled water BPA W912D1-05-A-0058 to CO-conspirator Contractor C in the amount of $1,841,428.57.

24. On or about May 25, 2005, COCKERHAM created call 0005 on bottled water BPA W912D1-05-A-0058 to Co-conspirator Contractor C in the amount of $2,762,142.86.

25. On or about May 2005, COCKERHAM created call 0006 on bottled water BPA W9l2D1-05-A-0058 to Co-conspirator Contractor C in the amount of $322,250.00.

26. On or about July 14, 2005, M. COCKERHAM traveled from the United States to Kuwait via Frankfurt, Germany.

27. On or about August 11, 2005, M. COCKERHAM traveled from Kuwait to the United States via Frankfurt, Germany.

28. On or about September 2, 2005, M. COCKERHAM traveled from the united States to Kuwait via Amsterdam, the Netherlands.

29. In or about September 2005, M. COCKERHAM traveled from Kuwait to Dubai with a representative of Co-conspirator Contractor B to open safe deposit boxes.

30. In or about September 2005, while in Dubai, a representative of Co-conspirator Contractor B gave M. COCKERHAM Emirati dirham and United States currency.

31. In or about September 2005, M. COCKERHAM deposited the money provided by Co-conspirator Contractor B into safe deposit boxes in Dubai.

32. On or about September 11, 2005, M. COCKERHAM traveled from Kuwait to the United States via Amsterdam, the Netherlands.

33. On or about September 15, 2005, COCKERHAM issued call 0005 on bottled water BPA W912DI-05A-0071 to Co-conspirator Contractor B in the amount of $4,603,571.43.

34. On or about September 15, 2005, COCKERHAM issued call 0006 on bottled water BPA W912D1-05A-0071 to Co-conspirator Contractor B in the amount of $4,603,571.43.

35. On or about October 15, 2005, COCKERHAM issued call 0004 on bottled water BPA W912D1-05-A-0074 to Co-conspirator Cbnfxacfor A in the amount of $1,841,428.57.

36. On or about 0ctober 15, 2005, COCKERHAM issued call 0008 on bottled water BPA W912D1-05-A-0084 to Co-conspirator Contractor C in the amount of $4,603,571.43.

37. On or about December 18, 2005, COCKERHAM issued call 0010 on bottled water BPA W912D1-05-A-0084 for Co-conspirator Contractor C in the amount of $4,963,735.71.

38. On or about December 20, 2005, COCKERHAM issued call 0011 on bottled water BPA W912D1-05-A-0084 for Co-conspirator Contractor C in the amount of $2,580,000.

39. In or about 2005, COCKERHAM created a document detailing the amounts of money he received from each of the Co-cosnpirator Contractors and identifying the individuals to whom the money was paid, including M. COCKERHAM, BLAKE, Co-conspirator One and others.

40. In or about 2015, BLAKE received approximately $300,000 from Co-

conspirator Contractor A and approximately $2 million from Co-conspirator Contractor C.

41. In or about 2005, M. COCKERHAM received approximately $300,000 from Co-conspirator Contractor A; approximately $1 million from Co-conspirator Contractor B; and approximately $500,000 from Co-conspirator Contractor C.

42. In or about 2005, Co-conspirator One received approximatety $250,000 from Co-conspirator Contractor B and approximately $1,250,000 from Co-conspirator Contractor C.

43. In a document dated April 22, 2006, BLAKE detailed the amounts of money she received from Co-conspirator Contractors A and C, among others, using code names to identify the individuals from whom she received the money.

44. On or about May 11, 2005, Co-conspirator One sent $509,637.05 via wire transfer to a title company in San Antonio, Texas.

45. On or about May 11, 2006, Co-conspirator One purchased real property in San Antonio, Texas.

46. On or about August 17, 2006, M. COCKERHAM traveled from the United States to Dubai via Amsterdam, the Netherlands.

47. On or about August 23, 2006, M. COCKERHAM traveled from Dubai to the United States via Amsterdam, the Netherlands.

48. On or about August 23, 2006, upon her arrival in the United States, M. COCKERHAM completed a Currency and Monetary Instrument Report, declaring that she was carrying $14,000 cash into the United States from Dubai.

**(All in violation of Title 18, United States Code, Section 371.)**

**COUNT TWO**
**18 U.S.C. § 201(b)(2)(A) and (C)**
**(Bribery)**

Paragraphs 1 through 48 of this Indictment are incorporated by reference as if fully stated herein, and the following is further alleged:

49. Beginning in or about June 2004 through in or about December 2006, in Kuwait and elsewhere, defendat

**JOHN COCKERHAM, Jr.** as a public official, directly and indirectly did corruptly demand, seek, receive, accept, and agree to receive and accept things of value in return for being influenced in the performance of official acts and for being induced to do and omit to do acts in violation of a lawful duty; that is COCKERHAM solicited and agreed to accept, among other things, approximately $900,000 from Co-conspirator Contraotor A in return, for awarding DoD contracts, modifications and calls to Co-conspirator Contractor A at Camp Arifjan,

Kuwait and elsewhere.

**(All in violation of Title 18, United States Code, Section 201(b)(2)(A) and (C).)**

**<u>COUNT THREE</u>**
**18 U.S.C. § 201(b)(2)(A) and (c)**
**(Bribery)**

Paragraphs 1 though 48 of this Indictment are incorporated by reference as if fully stated herein, and the following is further alleged:

50. Beginaing in or about June 2004 through in or about Deoember 2006, in Kuwait and elsewhere, defendant

**JOHN COCKERHAM, Jr.**

as a public official, directly and indirectly did corruptly demand, seek, receive, accept, and agree to receive and accept things of value in return for being influenced in the performance of official acts and for being induced to do and omit to do acts in violation of a lawful duty, that is COCKERHAM solicited and agreed to accept, among other things, approximately $1,700,000 from Co-conspirator Contractor B in return for awarding DoD contracts, modifocations and calls to Co-conspirator Contrractor B at Camp Arifjan, Kuwait and elsewhere,

**(All in violation of Title 18, United States Code, Section 20l(b)(2)(A) and (C).)**

**<u>COUNT FOUR</u>**
**18 U.S.C. § 201(b)(2)(A) and (C)**
**(Bribery)**

Paragraphs 1 through 48 of this Indictment are incorporated by reference as if fully stated herein, and the following is further alleged:

51. Beginning in or about June 2004 though in or about December 2006, in Kuwait and elsewhere, defendant

**JOHN COCKERHAM, Jr.**

as a public official, directly and indirectly did corruptly demand, seek, receive, accept, and agree to receive and accept things of value in return for being influenced in the performance of official acts and for being induced to do and omit to do acts in violation of a lawful duty, that is COCKERHAM solicited and agreed to accept, among other things, approximately $3,600,000 from Co-conspirator Contractor C in return for awarding DoD contracts, modifications and calls to Co-conspirator Contractor C at Camp Arirjan, Kuwait and elsewhere.

**(All in violation of Title 18, United States Code, 201(b)(2)(A) and (C)**

**<u>COUNT FIVE</u>**
**18 U.S.C. § 1956(h)**

**(Money Laundering Conspiracy)**

Paragraphs 1 through 48 of this Information are incorporated by reference as if fully stated herein, and the following is further alleged:

52. From in or about June 2004 and continuing until at least in or about July 2007, the exact dates being unknown, in Kuwait, the Western District of Texas and elsewhere, defendants

**JOHN COCKERHAM, Jr.,**
**MELISSA COCKERHAM**
**CAROLYN BLAKE**

and others, did knowingly and intentionally conspire to conduct financial transactions affecting interstate and foreign commerce, to wit: the transfer and delivery of millions of dollars in United States, Kuwati and Emirati currency, which in fact involved the proceeds of specified unlawfull activity, to wit: bribery, knowing that the transaction was designed in whole and in part to conceal and disguise the nature, location, source, ownership and control of the proceeds of said specified unlawfull activity and knowing that the property involved in the financial transaction represented the proceeds of some form of unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(l)(B)(I).

**(All in violation of Title 18, United States Code, Section 1956(h))**

**COUNT SIX**
**18 U.S.C. § 371**
**(Conspiracy to Obstruct Justice)**

Paragraphs 1 through 48 of this Indictment are incorporated by reference as if fully stated herein, and the following is further alleged:

53. From in or about December 2006 until in or about July 2007, in the Western District of Texas, Kuwait, the United Arab Emirates, and elsewhere, defendants

**JOHN COCKERHAM, Jr.,**
**MELISSA COCKERHAM**
**CAROLYN BLAKE**

and othexs did knowingly and unlawfully oombine, conspire, confederate, and agree with others known and unknown to commit offenses against the United States, that is, to corruptly alter, destroy, mutilate, and conceal a record, document, or other object and attempt to do so, with the intent to impair the object's integrity and availability for use in an official proceeding, and otherwise obstruct, influence, and impede any official proceeding, and attempt to do so, all in violation of Title 18, United States Code, Section 1512(c)(l) and (2).

**OBJECT OF THE CONSPIRACY**

54. It was an object of the conspiracy for COCKERHAM, M. COCKERHAM,

BLAKE and others to misrepresent the source of funds, and create fradulent loan agreements and other correspondence in an effort to legitimize the source of payments made by Co-conspirator Contractors to COCKERHAM and his assignees.

## MANNER AND MEANS OF THE CONSPIRACY

55. It was part of the conspiracy that COCKERHAM and others would, among other things, direct CO-conspirators to destroy evidence, make false representations to investigators and create fraudu1ent loan documents.

## OVERT ACTS

56. In or about January 2007, COCKERHAM instructed BLAKE, if questioned by investigators, to deny receiving money, to claim the money was given as a loan and to say that the money represented investments for a start-up company.

57. In or about January 2007, COCKERHAM instructed BLAKE to "get rid of everything."

58. In or about January 2007, COCKERHAM instructed Co-conspirator Contractors to deny making payments on COCKERHAM's behalf and/or to claim that the payments were loans.

59. In or about March 2007, BLAKE denied receiving the money detailed on the April 22, 2006, document she created and stated that the money roprosented donations to a ministry that she planned to establish. 60. In or about April 2007, M. COCKERHAM created documents indicating that monies provided by Co-conspirator Contractors A and B were loan payments.

**(All in violation of Title 18, United States Code, Section 371)**

Paragraphs 1 though 48 of this Indictment are incorporated by reference as if fully stated herein, and the following is further alleged:

## CRIMINAL FORFEITURE

61. Pursuant to Title 18, United States Code, Section 981(a)(l)(C) and Title 28, United States Code, Section 2461(c), COCKERHAM, M. COCKERHAM and/or BLAKE, once convicted of Count 1 shall forfeit to the United States the following:

a. Any property, real or personal, which constitutes or is derived from proceeds traceable to the conspiracy to violate 18 U.S.C. § 201, in violation of 18 U.S.C. § 371.

b. A sum of money equal to the total mount of proceeds traceable to the conspiracy to commit violations of 18 U.S.C. § 201, in violation of 18 U.S.C. § 371, as charged in Count One, for which the defendant(s) is/are convicted.

62. Pursuant to Title 18, United States Code, Section 98(a)(l)(C) and Title 28, United states Code, Section 2461(c), COCKERHAM, once convicted of counts 2, 3, and/or 4 (bribery (18 U.S.C. § 201)) shall forfeit to the United States the following property:

a. All right, title, and interest in any and all property involved in the violation of Title l8, United States Code, Sections 201, for which the defmdaat is convicted, and all property traceable to such property, including the following: 1) all money or other property that was the subject of each violation of Section 201; 2) all commissions, fees and other property constituting proceeds obtained as a result of those violations; and 3) all property used in any manner or part to commit or to facilitate the commission of those violations.

b. A sum of money equal to the total amount of money involved in each offense in violation of 18 U.S.C. § 201, as charged in Counts 2 through 4, for which the defendant is convicted.

63. Pursuant to Title 18, United States Code Section 982, COCKERHAM, M. COCKERHAM and/or BLAKE, once convicted of Count 5 (money laundering conspiracy (18 U.S.C. § 1956(h)) shall forfeit to the United States the following property:

a. All right, title, and interest in any and all property involved in the violation of Title 18, United States Code, Section 1956(h), fix which the defendant(s) is/are convicted, and all property traceable to such property, including the following: 1) all money or other property that was the subject of each violation of Section 1956 (h); 2) all commissions, fees and other poperty constituting proceeds obtained as a result of those violations; and 3) all property used in any manner or part to commit or to facilitate the commission of those violations.

b. A sum of money equal to the total, amount of money involved in each offense in violation of 18 U.S.C. § 1956(h), as charged in Count 5, for which the defendant(s) is/are convicted.

64. The property to be forfeited in connection with the convictions in Counts 1 through 5 includes $9,600,000, a portion of which may be satisfied by the forfeiture of the following assets:

a. Real property located at 1802 N. Maine Avenue, San Antonio, Texas, 78212.

b. Real property located at 111 East Locust, San Antonio, Texas, 78200.

c. Real property located at 117 East Locust, San Antonio, Texas, 78212

65. Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b), the defendants shall forfeit substitute property, up to $9,600,000 if, by any act or omission of the defendants, the property described in the above paragraphs, or any portion thereof, cannot be located upon the exercise of due diligence; has been transferred, sold to or deposited with a third party has been placed beyond the jurisdiction of the Court;

has been substantially diminished in value; or has been commingled with other property which cannot be divided without difficulty.

**(Criminal Forfeiture, pursuant Title 18, United States Code, Sections 98l(a)(l)(C), 982(a) and Title 28, United States Code, Section 2461(c).)**

A TRUE BILL,

/s/
FOREPERSON OF THE GRAND JURY

approved by:

WILLiAM M. WELCH, II
Chier Public Integrity
Section Criminal Division

LISA PHELAN
Chief, Antitrust Division
Criminal Enforcement Section

/s/
Ann C. Brickley
Richard B. Evans
Trial Attorneys
Public Integrity Section

/s/
Emily W. Allen
Mark W. Pletcher
Trial Attorneys
Antitrust Division