# In The United States Court of Federal Claims

**Seraphin Transport Co.**

Plaintiff,

vs.

**The United States**

Defendant

Case No. 07-359C
Judge Francis M. Allegra

## Surreply Memorandum in Opposition to Defendant's Motion to Dismiss

Seraphim Transport Co., Plaintiff, provides this surreply memorandum of points & authorities in opposition to the Motion to Dismiss. The Government's Reply Brief contains three serious legal errors.

### 1. Ambiguous Language Construed Against Author

Ambiguous contract language is to be construed against the author. Crown Landry & Dry Cleaning, Inc. v. U.S., 29 Fed. Cl. 506, 516 n. 3. (1993); Restatement (Second) Contracts § 206 (1981). The Government was the author of the contract in dispute. The Government—without citation to any authority—argues this Court should ignore this rule of contract interpretation and construe competing provisions in the Government's favor. (Government Reply Brief at 2.) ("While Seraphim's opposition focused solely on the language in paragraph 5 of the Statement of

Work (SOW), there is additional language throughout the agreement that supports our position that the agreement is a BPA, not a contract.") Contrary to the Government's unsupported assertions, this Court has an obligation to read the contract provisions to be consistent. Crown Landry & Dry Cleaners, Inc., 29 Fed. Cl. at 515. Please see Seraphim's discussion of a consistent reading of the contract on pages 7-8 of its original opposition. The fact is that the contract was an indefinite delivery, indefinite quantity contract with a minimum purchase provision.

**2. Where the Government has the contractual power to cancel a contract at will, does it have the power to cancel the contract in retaliation for the contractor refusing to pay a bribe? In other words, does the Government violate its covenant of good faith & fair dealing by cancelling a contract in retaliation for the contractor not paying a bribe where the Government had the power to cancel for any reason?**

The Government argues that since it has the power to cancel an indefinite delivery, indefinite quantity contract after making minimum purchases, it did not violate its obligation of good faith & fair dealing by exercising its right to cancel in retaliation for

Seraphim refusing to pay a bribe. (Government Reply Brief at 3-4.) Actually, the Government never discusses Count III, breach of covenant of fair dealing & cooperation, and so by implication argues that it's solicitation of bribes does not violate such covenant.

The Government's assertion is incorrect. The covenant of good faith & fair dealing is violated by an "abuse of a power … to terminate the contract." Restatement (Second) Contracts § 205 cmt. e (1981). In fact,

> **Several courts have found that an express power to terminate a contract at will was modified by a duty of good faith**. See, e.g., Fortune v. National Cash Register Co., 373 Mass. 96, 364 N.E.2d 1251 (1977)(salesman's employment contract); Spindle v. Travelers Ins. Cos., 66 Cal.App.3d 951, 136 Cal.Rptr. 404 (1977), 26 Drake L.Rev. 883 (1976-77)(termination of physician's malpractice insurance allegedly as part of scheme to intimidate the profession to accept higher premiums; court analogized from the insurer's duty to settle claims in good faith …); L'Orange v. Medical Protective Co., 394 F.3d 57 (6th Cir. 1968)**(termination of dentist's malpractice insurance as retaliation because he testified against other dentist insured by same carrier)**; Shell Oil Co. v. Marinello, 63 N.J. 402, 307 A.3d 598 (1973), cert. denied, 415 U.S. 920 (1974)(termination of service station franchise; court reasoned both from dominant position of franchisor and from Legislature's enactment of franchising statute not applicable to particular transaction).

Restatement (Second) Contracts § 205 reporter's note, cmt. e (1981)(emphasis added). The covenant of good faith & fair dealing does apply to government contracts. Malone v. U.S., 849

F.2d 1441, 1445 (C.A. Fed. 1988)(citing to Restatement (Second) of Contracts).

The discussion in Fortune v. National Cash Register Co., 364 N.E.2d 1251 (1977), is particularly helpful since it too involved the right to terminate a contract at will—the very same right the Government touts so loudly before this Court. In Fortune, the defendant-employer (NCR) terminated the plaintiff-salesman the day before the employer signed up a very large customer in the salesman's territory, a signing-up that would have entitled the salesman to a large commission, indeed. The court reasoned as follows:

> The central issue on appeal is whether this "bad faith" termination constituted a breach of the employment at will contract. Traditionally, an employment contract which is "at will" may be terminated by either side without reason. … .
>
> The contract at issue is a classic terminable at will employment contract. It is clear that the contract itself reserved to the parties an explicit power to terminate the contract without cause on written notice. It is also clear that under the express terms of the contract Fortune has received all the bonus commissions to which he is entitled. Thus, NCR claims that it did not breach the contract, and that it has no further liability to Fortune. According to a literal reading of the contract, NCR is correct. … .
>
> However, Fortune argues that, in spite of the literal wording of the contract, he is entitled to a jury determination of NCR's motives in terminating his services under the contract and in finally discharging him. We agree. We hold that NCR's written contract contains an implied covenant of good faith and fair dealing, and a termination not made in good faith constitutes a breach of contract.
>
> We do not question the general principles that an

> employer is entitled to be motivated by and to serve its own legitimate business interests; that an employer must have wide latitude in deciding whom it will employ in the face of the uncertainties of the business world; and that an employer needs flexibility in the face of changing circumstances. We recognize the employer's need for a large amount of control over its work force. However, we believe that where, as here, commissions are to be paid for work performed by the employee, the employer's decision to terminate its at will employee should be made in good faith. NCR's right to make decisions in its own interest is not, in our view, unduly hampered by a requirement of adherence to this standard.
>
> On occasion some courts have avoided the rigidity of the "at will" rule by fashioning a remedy in tort. We believe, however, that in this case there is remedy on the express contract. In so holding we are merely recognizing the general requirement in this Commonwealth that parties to contracts and commercial transactions must act in good faith toward one another. Good faith and fair dealing between parties are pervasive requirements in our law; it can be said fairly, that parties to contracts or commercial transactions are bound by this standard. … .
>
> Recent decisions of other jurisdictions lend support to the proposition that good faith is implied in contracts terminable at will. In a recent employment at will case, Monge v. Beebe Rubber Co., 114 N.H. 130, 133, 316 A.2d 459, 552 (1974), the plaintiff alleged that her oral contract of employment had been terminated because she refused to date her foreman. The New Hampshire Supreme Court held that "(i)n all employment contracts, whether at will or for a definite term, the employer's interest in running his business as he sees fit must be balanced against the interest of the employee in maintaining his employment, and the public's interest in maintaining a proper balance between the two. … We hold that a termination by the employer of a contract of employment at will which is motivated by bad faith or malice … constitutes a breach of the employment contract. … Such a rule affords the employee a certain stability of employment and does not interfere with the employer's normal exercise of his right to discharge, which is necessary to permit him to operate his business efficiently and profitably."

Fortune, 364 N.E.2d at 1255-1257.

The reasoning of Fortune is highly relevant here. It too involved the right to terminate at will, the right to terminate without reason. It too involved past payments to the plaintiff that constituted all that he was entitled to under the contract. It too recognized the wide latitude, flexibility, and control needed by the defendant in managing its affairs. It too found that these needs would not be unduly hampered by the obligation to conduct itself in good faith toward its contracting parties.

The policy considerations in Seraphim's contract that favor finding a covenant of good faith & fair dealing are even stronger than those of Fortune. They are stronger since fostering honesty among defense contractors is far more important than that of fostering stability in employment relations—the only policy consideration of Fortune. Soliciting bribes of defense contractors in time of war is an especially serious violation of public policy and is punishable as a crime and is prohibited by civil law (The Anti-Kickback Act of 1986 (41 U.S.C. 51.58)). In short, the public policy considerations against Government bribery and retaliation are enormous. Courts have found the covenant of good faith & fair dealing to be violated in at-will contracts when much lesser public policy interests are at stake—for example, age discrimination laws that do not provide a private cause of action. McKinney v.

National Dairy Council, 491 F.Supp. 1108, 1122 (D. Mass. 1980).

### 3. Fact Pleading & New Claims

The Government makes a third set of arguments, which once again contain implicit legal principles, principles clearly erroneous. The Government, first, argues that the Rules of the United States Court of Federal Claims require fact pleading, not notice pleading and, second, it argues that bribery and retaliation raise separate and distinct causes of action from bad faith termination and breach of a duty of good faith and fair dealing. (Government Reply Brief at 4-5.)

The Government seems to believe that the Rules require fact pleading—a pleading requirement abrogated many decades ago in Federal Courts—so that Seraphim was required to state in detail all of the particular facts and circumstances of the Government's bad faith and breach of the covenant of good faith & fair dealing. Count II of the Amended Complaint is for bad faith termination and states: "Defendant's termination of the contract was motivated by bad faith or constituted an abuse of discretion." (Amended Complaint at ¶ 68.) The Government believes that since the particular facts and circumstances of the bad faith and good faith covenant were not plead, these counts must be dismissed.

Rule 8 is incorporated from the comparable Federal Rule of Civil Procedure 8. "Rule 8 establishes the "notice" pleading protocol for the federal courts." Fed. R. Civ. Proc. 8 authors' commentary. Commentators have described notice pleading thus:

> The Rules impose a relatively lenient obligation upon pleaders in federal court. Litigants are generally required to satisfy only "notice" pleading obligations: they must provide their opponent with fair notice of their claim and the grounds upon which that claim rests. A pleader meets this obligation by notifying the opponent of the claim and proposed relief to such a degree that the opponent is able to formulate a response. In this respect, federal court practice differs from the more elaborate and demanding responsibilities imposed by many State courts in "fact" pleading jurisdictions. A pleader does *not* have to set forth legal theories, and pleading an incorrect legal theory is not necessarily fatal. **The simplified federal "notice" pleading standard counts on the discovery rules and summary judgment practice to further define the disputed facts in the case and remove unmeritorious claims.**

Steven Baicker-McKee et al., Federal Civil Rules Handbook 2008 285 (Thomson West)(emphasis in original, bold emphasis added)(footnotes omitted). The Government does not and cannot cite any law to the contrary. Seraphim was not required to describe in detail the nefarious actions of the Government that Seraphim plead in its complaint.

Moreover, this Court is obliged to accept as true Seraphim's assertions that the Government terminated the contract in bad faith and that the Government violated its duty of good faith & fair dealing. Ainslie v. U.S., 355 F.3d 1371, 1373 (C.A. Fed. 2004). And since the Court is not confined to an examination of the complaint, it must consider Seraphim's two exhibits provided with

its opposition memorandum. Clifton v. U.S., 31 Fed. Cl. 593, 596 (1994), appeal dismissed, order recalled and vacated, review reinstated 53 F.3d 346, affirmed 66 F.3d 345 (Fed. Cir. 1995). Although the plaintiff does have the burden to establish the facts supporting jurisdiction when the plaintiff's facts are challenged (Rohmann v. U.S., 25 Cl.Ct. 274, 277 (1992)), the Government has not challenged Seraphim's version of the facts.

In fact, this section of the Government's brief is based on little more than a sneer. The Government sneers—"highly inflammatory allegations." If the Government's sneer constituted challenging Seraphim's version of the facts, then Seraphim would have the burden to establish the facts supporting jurisdiction. Rohmann, 25 Cl.Ct. at 277. However, a sneer does not constitute challenging Seraphim on the facts.

The question begs to be asked—instead of sneering at the corruption of its own agents, why did not the Government counter the facts? Why did not the Government obtain affidavits from Majors Cockerham and Momon denying the allegations? Why did not the Government obtain affidavits from its fellow Department of Justice attorney prosecuting Cockerham revealing the factual basis for the prosecution and explaining that the bottled water contracts for which Cockerham is being indicted have nothing to do with Serpahim? It may well be that the Government did contact Major Momon to learn that he declined to provide a statement and invoked the right against self-incrimination found in the Fifth Amendment to the U.S. Constitution.

The Government's second argument—again by implication—

is that bribery does not constitute a bad faith action or a breach of covenant of good faith & fair dealing so that it cannot be raised unless alleged as a separate cause of action. Again, the Government does not and cannot cite any law to support such a proposition. The Government's argument assumes that attempted bribery and retaliation for not paying a bribe raise additional contract-based causes of action. Seraphim would be deeply interested in learning what these additional causes of action are. As soon as the Government notifies Seraphim what it has in mind, Seraphim represents to the Court that it will promptly seek to amend its complaint to add them. However, the fact is that Seraphim has no other causes of action other than what it has already plead—unsupported implicit legal assertions of the Government aside.

## 4. Conclusion

WHEREFORE, the Government has not under Rule 12(b)(1) & (6) shown that "it is beyond doubt that [Seraphim] can prove no set of facts which would entitle [it] to relief." Clifton v. U.S., 31 Fed. Cl. at 596. Since the Government has not even bothered in its motion to have its agents deny that they retaliated against Seraphim for refusing to pay a bribe, this Court is obliged to accept Seraphim's pleadings and un-contradicted affidavit as well as Cockerham's indictment..

Respectfully submitted,

Dated: _30 November 2007_ Signed: __s/Michael Trevelline______________

Michael J. Trevelline, DC Bar # 437454
Address: 1823 Jefferson Place, NW
Washington, DC 20036-2504
Telephone: (202) 737-1139/Fax: (202) 775-1118

Email: mjt@mjtlegal.com
Attorney for Plaintiff Seraphim Transport Co.

## Certificate of Filing

I hereby certify that on this **30th** day of **November, 2007** a copy of the foregoing was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/Michael Trevelline